Next case is Smith v. Price. Mr. Flora, let's let everyone settle down. All right, Mr. Flora, the lectern is yours. Go ahead. Morning, Your Honors, and may it please the Court, my name is Collin Flora. I am the recruited counsel for Mr. Kevin Smith. This case arises from two incidents in June 2019. The question before the Court is fundamentally, are the three officers who were named in this suit entitled to qualified immunity? Because the Eighth Amendment right for an inmate to be free from intended or otherwise malicious harm was clearly established prior to June 2019, the District Court erroneously granted summary judgment, and this case should be remanded for further proceedings, specifically a jury trial on Mr. Smith's Eighth Amendment claims. Let's talk through those. What are they? What are the Eighth Amendment claims that were raised below? The Eighth Amendment claims, so there's two different occurrences. There's the June 13th and the June 20th occurrences, both happening within an inmate transport vehicle, as Mr. Smith at the time was an inmate under the care of the Indiana Department of Correction, housed at the Wabash Valley Correctional Institute. At that time, Mr. Smith had a lingering injury in his elbow that needed corrective surgery. It had lasted over a decade. So Mr. Smith had gotten surgery in Indianapolis on his arm. After Mr. Smith's surgery, he was returned to Wabash Valley, and he was held in the hospital unit there for supervision. While he was there, he had a negative interaction with another correctional officer, not named in this action, by the name of Foster. As a result of that interaction, Mr. Smith filed a grievance against Officer Foster, and Mr. Smith also was, from that point forward for the rest of his time at Wabash Valley, committed to a special housing unit. Shortly thereafter, Mr. Smith was returned for follow-up care in Indianapolis. On that trip, on June 13th, he was transported by Officer Price, who was a party to these proceedings, and Officer Hancock, who was not named in these proceedings, for reasons addressed in the summary judgment order, and we can circle back on if necessary. But on that trip, nothing of note happened on the way to Indianapolis. But when he was brought into the facility, into Eskenazi Hospital, the two officers started inquiring of Mr. Smith regarding the filing of a grievance against Officer Foster. At that point, Mr. Smith didn't think anything of it. He just said essentially, yeah, unfortunately, I had to file a grievance. It's his only remedy as an inmate when he's confronted with a negative action. Was that inquiry made during the June 13th or the June 20th trip? Your Honor, that was the June 13th. June 13th trip. Yes, it was. No such inquiry was made on the June 20th. Frankly, that's why the First Amendment claims were summary judgments granted against those for the June 20th trip, and why we didn't appeal those issues, is there was no direct evidence of the knowledge on June 20th of the grievance being filed. But on June 13th, there was ample evidence of the grievance. In fact, it was what Officers Hancock and Price... But you still maintain on June 20th, he was taken for a ride. Yes, we maintain he was taken for a ride. But you're not alleging or not maintaining that the June 20th episode was in retaliation for filing charges, is that right? Your Honor, I didn't have the evidence to maintain that claim, because we needed to have some evidence that showed knowledge of those officers. By the time I was brought on the case and the discovery was concluded, I wasn't able to depose those officers and try to get that evidence. So the only evidence that I had that I could put forward was of June 13th. Whether the June 20th existed, I don't know. As I always tell clients, I can prove what I have evidence to prove, I can't prove reality. Okay, thank you. Mr. Floro. I'm sorry. I'm sorry, go ahead. Can we assume that we have a perfect recitation of the facts? My question to you, Director, was what was the theory for the June 13th Eighth Amendment claim? The theory of the Eighth Amendment claim is a failure to seatbelt along with the something more that this court in Dale v. Agresta signaled, what other courts have signaled all along, what the Fourth Circuit in Thompson v. Virginia adopted, the Sixth Circuit in Scott v. I think this is an important point, because the briefs of the opposition to the district and the district court's opinion obfuscate this. You are arguing with respect to both incidents, am I right? Correct. The fact that it was seatbelt plus? Well, I wouldn't say both incidents are seatbelt plus. The first is seatbelt plus. The second incident, to the best of, well, not just to the best of my knowledge, in fact, there was a seatbelt applied. It was the, on the June 20th, it was the gunning it over railroad crossings. Just the, okay, we're fine. Yes. The first is the lack of the seatbelt, which notably, in all of the times Mr. Smith was ever transported, was the only time he did not have a seatbelt applied. So is there an Eighth Amendment right to a seatbelt? No, Your Honor, there's not an independent Eighth Amendment right to a seatbelt, at least so far as been established under case law. I'm trying to drill down on what is your theory. Yes. You're telling me what the facts are.  So I'm asking, trying again, what is your theory for June 13th? The theory is that Officer Price, in addition to Officer Hancock, worked in collaboration to first, with Officer Price, leave off the seatbelt so there would be no security for a man who now has his arm. Is this an excessive force? Is this a confinement? I'm asking, what is the theory, not the facts? Yes. Your Honor, given that the case law on this both, in fact, it's dealt with all three different theories. The Eighth Circuit has adopted deliberate indifference under these circumstances. The Fourth and Sixth Circuit has adopted excessive force. What did you argue below? We argued that there was sufficient, we argued all of that case law. So it was not as... So your theories were? I would say our theories were at least well preserved for deliberate indifference and for intentional infliction, wanton infliction of harm. So excessive force. And that's for June 13th? That's for June 13th, Your Honor. So you're contesting today is that below you raised a deliberate indifference claim and you also raised an excessive force claim for June 13th? Yes. That is our argument here. All right. And what did you raise for June 20th? Again, for June 20th, and part of this goes back to the fact that other courts have applied two different standards on these, both deliberate indifference and the excessive force. So we would argue that we've raised both by reliance on those authorities. But yes, we would... Is the law clear that you had to be specific as to your theory of the case? Your Honor, I don't believe so. Not more so than... Did you have to allege anything more? I don't believe that we did, at least not in response to summary judgment. So for purposes under the notice pleading, especially with the court's screening order, all that needed to be established at that point was that we were alleging an Eighth Amendment violation. As to what was going to be the exact elements that we needed to prove that Eighth Amendment violation, at most that's something that would arise in response to the filing of the summary judgment. And we would argue, consistent with this court's view toward waiver on not being hyper-technical, I would say if there's a time never to not be hyper-technical, a summary judgment filed seven days after I was recruited as counsel that required me to debrief during Thanksgiving and during an NDS Supreme Court... Certainly nobody was surprised as to what you were alleging happened, but it violated the Eighth Amendment. Agreed, Your Honor. And I think we could also take guidance from the Thompson decision out of the Fourth Circuit, where in that decision the Fourth Circuit acknowledged that the trial court, or the district court, looked at it entirely as a deliberate indifference. And took it as assumed. And the Fourth Circuit looked at it in light of the Hudson v. McMillan decision and said this has to be excessive force. But I would also note that the Fourth Circuit also found there were sufficient facts to make a deliberate indifference claim as well. And especially as to the June 20th, there might be a serious question of, do you have to split the analyses between the driver of the vehicle and the passenger of the vehicle? I would say probably not in this circumstance, given that the passenger with the hand signals over the railroad crossing to induce the driver to speed up is a very direct participant calling for the infliction of pain on Mr. Smith. Mr. Flora, I think you must have read my mind because I was going to ask you that directly with regard to the earlier incident. That is, you said your theory is that Price and Hancock somehow agreed or conspired, although I don't see a conspiracy claim, to deprive Mr. Smith of his Eighth Amendment rights. What is the best evidence in the record for that type of agreement or conspiracy or concerted action? The best evidence in the record, Your Honor, and again we have to take the evidence in the light most favorable to Mr. Smith as the non-movement, is the conversation that was had as walking in, setting forth the knowledge of both officers as to the prior grievance filing. The warning articulated in the presence of both officers and based on Mr. Smith's testimony, I believe it is shared by the officer's statements that Mr. Smith needs to watch out for filing grievances. Immediately after that, Mr. Smith, who at no point at any of his time incarcerated in the Indiana Department of Correction, was transported without a seat belt, all of a sudden not only did not have a seat belt put on, Officer Price refused to put the seat belt on, and then shortly thereafter, with Mr. Smith never seeing a car pull out in front of Officer Hancock, all of a sudden we have the brakes slammed on and Mr. Smith goes flying forward. Is there anything? I think that you would have a stronger case if the defendant were Mr. Hancock, right? Because Officer Hancock was there when Officer Price refused to put on the seat belt. But Officer Price here was the passenger and not the driver. Are there any facts after they started driving that would— because in the later incidents, there was the hand signals, there was— is there anything like that with regard to the first incident that would kind of tie the two together? There's not, Your Honor, but we have to look at this as both of them are indispensable parts of what happened. If Officer Hancock alone slammed on the brakes but the seat belt was applied, there's no injury. If Officer Price puts on the seat belt, he— Well, sure, but I think the response from defendants would be, well, Price—there's nothing to prove that Price had any idea how Officer Hancock would operate the vehicle, right? He was just a passenger along for the ride. There were no hand signals. There was no encouragement. There was no, okay, now let's get him or anything to that effect. They seemed—and so it's almost like in some respects if you look at it as kind of a failure to intervene case, right, where Mr. Officer Price is sitting there. Officer Hancock starts driving erratically according to Mr. Smith, and Officer Smith does nothing about it. Maybe there's something there, but there still needs to be some sort of tie between, in my mind, between Officer Price and the erratic driving, and that's what I'm trying to kind of figure out. Your Honor, I will note two things on that. One, we were allowed to proceed on a First Amendment claim against Officer Price, so that at least case law within the First Amendment context about the circumstantial evidence when you've got an inference to be had about the knowledge and retaliation I think should apply in a circumstance like this because the alternative is, again, you've got a sine qua non situation. Without the actions of Officer Price to, at least circumstantial evidence suggests, leave the belt off for some reason and refuse the belt for some reason to immediately be followed by the officer that he had shared concerns with about a grievance, then taking those steps, I think you would be creating a case law situation where you've got two indispensable parts and you're going to maybe hold one responsible when both have to be concerted actors together. So, Your Honor, I hate to cut this short, but I know I've reserved five minutes for rebuttal, and I think we're two and a half into it. Yes, that's fine. Are there any questions at the moment? All right, thank you. Thank you, Your Honor. Ms. Rucker? Good morning. May it please the Court. The Court should affirm, because it was not clearly established that the officer's conduct violated the Constitution, precedent from this Court or the U.S. Supreme Court must have placed them on notice that their conduct was unconstitutional. But here Smith failed to show that Officer Price's actions of failing to buckle his seat belt or Officer Lamb and Ryland's actions of transporting him back to the facility in a warm van with bumpy road conditions violated the Constitution. Of course, now you see right away now you're characterizing the actions differently than your colleague did, aren't you? You look at the first, the right of June 13th as seat belt. That's correct, Your Honor. He says it's seat belt plus. Your Honor, Officer Price wasn't the one driving, and so he can't be held liable for Officer Hancock's actions. So I am looking at it a little differently, I guess, because we don't believe that Officer Price can be held liable for the driving. Because we take this now in the light most favorable to the plaintiff at this stage, right? Yes, when reviewing the facts, that's correct. Right. Yes, but you still have to consider that under Section 1993, he can't be held liable for another person's actions. Ms. Rucker, what if, like the second incident, what if Mr. Smith says he saw Mr. Price kind of give a signal not approvingly or say, you know, yeah, let's get him now, we're ready. In your mind, would that be sufficient for an Eighth Amendment claim against Officer Price? That would be more sufficient to show that they acted together. I would still say that it's not clearly established that under the other facts here that what happened was unconstitutional. Well, let's not talk about clearly established. I'm getting to whether or not there's an underlying violation in and of itself. So if there is some evidence of concerted action or agreement between Officer Price and Officer Hancock as to what they would do to Mr. Smith, in that context, do you think there would be enough for this case to go to trial? Yes, and Officer Price could be held liable for failing to intervene if those were the facts. But here, we don't have any evidence connecting him or connecting that Officer Price knew that Officer Hancock was going to drive this way. But also, if you look at Officer Hancock's driving, he wasn't driving in a manner like in the cases cited by Smith. The evidence is that he was braking and accelerating, but we know that it was rush hour traffic in Dothan, Indianapolis. Well, isn't that a jury question? That's a genuine issue, triable fact, isn't it? I mean, if he was just stopping star traffic, that's one thing. If he was bringing it up to a decent speed and then jamming on the brakes, jamming on the brakes, knowing he had this passenger in the back, that's a different story, maybe, or so a jury might find. Well, I think for whether it was clearly established, it's not a jury question because there is no... What do you need to make it clearly established? Actual congruity? We would need a case from this court or the Supreme Court establishing that his actions violated the Constitution. The case doesn't need to be on all fours, but it needs to be closer. No, it doesn't need to be on all fours. It needs to be closer. That's a cow's a tree, isn't it? I mean, you know, we need a case where a guy actually braked real hard. That's what you want, right? And where a court said that violated the Constitution under the set of facts in that case. I think that we would need a case that shows that failing to seat belt in addition to driving under these similar conditions, yes, like in rush hour traffic where he was braking and accelerating, violated the Constitution. And none of the cases, well, Smith didn't cite any cases from this court, and then also the cases he relies on. The driving in all of those cases is a lot more egregious than what we have here, with both Price in the first incident and in the second incident. On the June 13th, what is the standard that was used to determine whether or not Price's behavior rose to the level of constitutional violation? When we moved for summer judgment, we used the deliberate indifference standard. So whether he suffered an objectively serious risk of harm in failing to seat belt, the district court also applied the deliberate indifference standard, and Smith never argued that it should be excessive force. That's the June 20th, June 13th. For either of them, I'm sorry, Your Honor. I think for both of them, we proceeded under deliberate indifference. And so you said below there was no contention of excess, no argument raised regarding excessive force? No, and he may have cited some excessive force cases, but he doesn't set out the standard for excessive force and argue that he had stated a claim as to that. Which, I mean, if you're going to be responding to summary judgment, I mean, that's your time to present your evidence to show that you have a case that, you know, that there's an issue of fact that should go forward. And we proceeded under the deliberate indifference standard. And like my counsel on the other side pointed out, a lot of the cases do address both deliberate indifference standard as well as excessive force. So it's not quite entirely clear. But I think the deliberate indifference standard makes sense here because he's challenging a condition that he says posed a risk to his safety. In the second incident, he argues or is challenging that he was subjected to uncomfortable conditions and the cost and pain, the bumpiness and the road cost and pain. And so I think that's more akin to conditions of confinement, which is deliberate indifference standard. With regard to the second incident, Mr. Smith does offer evidence that the officers, in his mind, kind of intentionally drove roughly over the tracks, right? And they, according to Mr. Smith, there was a detour that was unnecessary and that they intentionally ran quickly over the tracks just to make him feel uncomfortable or just to bother him or make him feel pain. And he said that that caused him some pain. With regard, putting the clearly established inquiry to the side, why is that not enough for an Eighth Amendment violation? Because it seems like there's evidence of intentional conduct. And of conduct that causes pain with no, at least in my mind, pedagogical or a penological purpose. Well, first, and I'll address both deliberate indifference and excessive force. Under the deliberate indifference standard, you first have to have an objectively serious condition. And just driving over the tracks, he first complains that they were going too slow and that caused him pain, and then he complains they were driving too fast. That is not enough to establish an objectively serious condition. And then under excessive force, the force has to be more than de minimis. And again, they were just driving over the railroad tracks. While they may have taken pleasure that it was causing him pain, that may have been unprofessional, but it doesn't rise to an Eighth Amendment violation. No, it's relevant and probative as to their intent, though, isn't it? Yes, I would agree that it would be relevant to their intent. But you still have to get past the first part, which is an objectively serious condition or more than de minimis force if you're using excessive force. And the incidents, in the second incident, he also complains that the van was hot. And this court has held that being exposed to hot temperatures in the cell for even longer periods of time doesn't violate the Eighth Amendment. But here again, you're cutting up their cause of action. Heat, being bounced around, that's not their case. Their case is they created uncomfortable conditions to make this guy extremely uncomfortable and indeed unhealthy on the trip back. I agree that you can look at all of them. You do agree with that? Yes, I think you can look at all the conditions. But you didn't argue that. That's one of the irritations of your brief, very frankly. Well, I mean, I think that we looked. I cited cases that talk about the temperature. I think even when you look at them all together, the Eighth Amendment doesn't require that prisoners be comfortable. And that's one of the crux of his complaints is that he was uncomfortable by the temperature, by going over the railroad tracks and the bumps too quickly. And we have to remember, I mean, he had just had surgery. He was probably already uncomfortable. That's why uncomfortable may not be a particularly good word to use, or at least we ought to leave it to a jury whether it was a matter of comfort or a matter of care, right? I don't think that this is a question for the jury in terms of under just the Eighth Amendment analysis taking a side to clearly establish because, like I said, you have to have the objectively serious risk of harm to his health and safety. And he doesn't allege that the second incident caused him any harm to his health or safety. He was in temporary pain. You have cases that are dealing with the infliction of pain as being, per se, a violation of the Eighth Amendment. Sure, but in those cases, it has to be more than de minimis force. And if you're using— Why shouldn't a jury decide whether this guy had de minimis pain or something a lot more? Well, I mean, I think that this isn't—a jury is not necessary because as the district court resolved the case on the clearly established problem. What does qualified immunity leave to the right to jury trial? What's left? I'm sorry. I'm not sure I understand. Yeah, I know. I mean, what's left? You keep telling me that there's a no jury question, no jury question, no jury. What's left? Well, there's no— It sounds to me like qualified immunity, in your view, is absolute immunity. There's no question for a jury because it wasn't clearly established at the time that these officers' conduct violated the Constitution. As I said, he didn't point to any case from this circuit or the Supreme Court that these officers' actions rose to the level of an Eighth Amendment violation. The deliberate infliction of pain is a violation of the Eighth Amendment. But that's not specific enough. There's case law that says that for clearly established, it has to be specific. At least now we have the government of your state on record as saying that deliberate infliction of pain doesn't violate the Eighth Amendment. And maybe that should be in a printed opinion for this court. I'm sorry. I didn't say that. You said that. I said that it's not enough for that standard to meet a clearly established—for it to be clearly established for qualified immunity purposes. I mean, if it was enough for the Eighth Amendment standard to clearly establish that something violated the Constitution, then I don't know that there would be a point to having clearly qualified immunity. Because we know from this court's cases and Supreme Court precedent that not every uncomfortable prison condition or use of force violates the Constitution. We are, again—it's getting to be a matter of rhetoric, isn't it? Uncomfortable versus pain. Well, I mean, I admit that he was in pain. I think it's best, counsel, to move away from whether or not—all right? The jury question of whether or not—and this is where we're trying to get you to direct us to. What put these officers on—are you suggesting there was nothing that put these officers on notice not to engage in this type of conduct? That's my question. Yeah. Yes. I mean, if we go back to the first incident, and I don't know if you meant both incidents or not, but there's—  I'm sorry? The second. The second incident? Yes. There's no cases from this court or the Supreme Court or even the robust consensus of cases that exposing the prisoner to heat and even purposefully driving over railroad tracks or driving on a bumpy side of the road is an eighth-amendment violation. Because, like I said, there's no objectively serious risk of harm to him. The use of force, if you do qualify as excessive force claim, is de minimis. So they wouldn't have been on notice that their actions had violated the Constitution, even taking the facts as we should in— So you're saying that your officers are permitted and are not instructed that the deliberate infliction of pain is forbidden when it's gratuitous and not for a legitimate penal purpose. They can obviously inflict pain if they have to subdue an unruly inmate, something of that nature. But the gratuitous infliction of pain is okay as long as you don't go too far. Is that right? No, I don't think that our officers are instructed that. And as I said, I don't think that it was professional what they did if they did what Smith is claiming. As long as there's no accountability, you're okay? No. I mean, there could be— You're not a professional, but there's no accountability for it. There could be accountability with the department. They could have been reprimanded and things like that. But in terms of whether it violated the Eighth Amendment, it must be clearly established. And none of the cases that Smith points to clearly establish that what these officers did violated the Eighth Amendment. I think my time is up. If there are no further questions, the officers asked that this Court affirm. Thank you. Mr. Flora, we will give you three minutes. Thank you, Your Honor. The first point I want to start with is the repeated statement about it needing to be an objectively serious condition or that an injury is de minimis. I would direct this Court back to its opinion in Murphy v. Walker from 1995 where merely withholding Tylenol from an inmate suffering from pain is infliction of pain. And in that instance, it is nature letting it take its course. But you cannot intentionally force a person in confinement into an instance of pain. And that's what we've got in the second instance here. Back to the point about whether Mr. Smith sufficiently argued it in the trial court below. I would direct the Court to page 19 of Mr. Smith's response in Opposition Summary Judgment, Docket 126. It's not the lengthiest of arguments, but the point of further evidence demonstrating a prison official acting with malicious intent is also sufficient to... Can you tell us that again? Where are you? My apologies. It's page 19 of the Summary Judgment response, which is Docket 126. Docket 126? Yes, Your Honor. In that paragraph, citing Thompson, citing Scott, the assertion is that a prison official acting with malicious intent is also sufficient to establish an Eighth Amendment violation. While that may constitute a, I believe, cursory analysis, in this Court's opinion in Sidney v. Hillman, even if in a relatively cursory fashion an argument is made, it is sufficient to preserve for this Court's review. Can you address the argument about qualified immunity in that context? The argument that the appellee raised with regard to whether or not the officers in the second incident had noticed that their actions would violate the Eighth Amendment. Yes, Your Honor. When it comes to that, there's two points that need to be made. The first is that the standard, I think the Sixth Circuit and Scott maybe put it best by saying the standard is fair warning. This Circuit, in its en banc decision in Sabo, also talked about what is needed. And I think what really stands out in the Sabo opinion is that this Court en banc said, yes, the Molineux Fourth Amendment case law, about it needing to be specific, applies, but it's still not a hyper granular specificity. What this Court said was, in truly egregious cases, a more general rule may apply with obvious clarity to the specific conduct in question. Now that's dealing also with circumstances where there's just no case law at all. A point that really stood out, and it wasn't until the very end when the officers' counsel was talking about the heat. Every other time, and it was the same thing the District Court said, was that there was no opinions from this Court or from the Supreme Court of the United States. That is not the standard this Court applied in Reed v. Palmer. That is not the standard of the Supreme Court of the United States at least since Wilson v. Lane in 1999. If there is a consensus of persuasive authority, now of course in the briefing we talk about District Courts, but at a minimum, the Fourth, Sixth, Eighth, Fifth, all of those circuits have a consensus. In fact, all of those opinions, and I see my time's up, Your Honor, but if I may briefly finish that point. With the exception of perhaps the Eighth Circuit's Brown v. Morgan in 1994, all of the other ones were not saying this is the new rule. They have said there is already a consensus. I'm sorry. I did have a follow-up. I pulled docket 126. Yes, Your Honor. And you wanted us to look at page 19? Yes, page 19 right after the block quote, the first sentence that concludes that paragraph. Tell me where you are. I'm looking at it. Your Honor, unless I've got a bad printout here, it would be right here on the page. What does it say? To me it says, Further evidence demonstrating a prison official acting with malicious intent is also sufficient to establish an Eighth Amendment violation. And that's enough. Oh, I see. So that general language there is you raising an Eighth Amendment excessive force claim? It is highlighting, Your Honor, I would direct the court also to the fact that it follows the analysis and block quote from the Carmoo v. Remington case. So it's invoking the authority that is that court's analysis and then highlighting that specific portion of the pending case law. Yes, I am contending that that is sufficient to preserve the argument. Those four lines preserve an excessive force claim? Had they not cited authority that was already bringing that in, then we might have a problem. But I would say by invoking that authority and directing the court to the authority that is case law on excessive force, yes, Your Honor. And you know where I'm headed. You're speaking over me so that I can't complete my question. I apologize. So if you could just give me a minute. I apologize, Your Honor. So we're not being curtsy here. I want to make sure that I understand where you're directing the court. That evidence demonstrating a prison official acting with malicious, is that where I'm supposed to be? Yes, Your Honor. And you're directing us that that is what put the court on notice below that you were raising the excessive force element of the Eighth Amendment? Yes, along with the entire argument on the First Amendment, which could only apply if we were arguing that there was intentionality in the conduct anyway. And so my next question, of course, you're probably knowing where I'm headed on this, is when we're looking at those lines there, there is language on the first page of the response where you're directing the court, the district court, of what you're raising in regards to a response. And it's really focused on conditions of confinement. Is there anything there that would have put us on notice that on page 19 that you're raising an excessive force? I'm just trying to make sure that you're making your best argument for where it is. No, I don't think that there is a better point that I can point to there,  Okay. I, on this, am asking the court to use its more expansive view, or I guess more conservative view, towards waiver, especially under the circumstances of recruiting. And what was the case that you cited that a cursory review is sufficient? Certainly, Your Honor. I believe in our brief we cited the Gupta case, but I would also note I was quoting from Sidney Hillman Health Center versus Abbott Labs. And that case was in your briefing as well? If it's not, then it is the quoted case from the Gupta decision that I then went back on. We're doing it again. I'm asking what's in your brief. The Gupta decision's in the brief, Your Honor. All right. Is the Sidney case cited or relied on in your briefing? I don't know if it, if I, because the portion of Gupta is quoting Sidney, I don't know if I truncated the quote, or if I removed the quotation or added in parens quoting Sidney. I don't know. Thank you. No, I appreciate it. I appreciate the transparency. Thank you. Thank you, Your Honor. Thank you, Mr. Flora. Thank you, Ms. Rucker. Mr. Flora, you were recruited for this case. Yes, Your Honor. And the court is grateful for your service. Thank you, Your Honor.